**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220005-U

Order filed July 31, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0005 Circuit No. 18-CF-511 |
| | ) | |
| ALONZO BROOKS, | ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not err in determining defendant was fit to stand trial.

¶ 2   Defendant, Alonzo Brooks, was convicted of unlawful restraint and sentenced to 12 months' probation. On appeal, defendant argues the Kankakee County circuit court erred in finding him fit to stand trial because it did not make an independent inquiry during the fitness restoration hearing. We affirm.

¶ 3                          I. BACKGROUND

¶ 4          On September 7, 2018, defendant was charged by superseding indictment with attempted aggravated kidnapping (720 ILCS 5/8-4(a), 10-2(a)(2) (West 2018)), child abduction (*id.* § 10-5(b)(10)(A)) and unlawful restraint (*id.* § 10-3(a)). The charges were based on the allegation that defendant approached a nine-year-old girl and forcibly led her away from her school bus stop. On September 21, 2018, defendant was initially found unfit to stand trial and committed to the Department of Human Services (DHS) for psychiatric treatment to restore fitness.

¶ 5          The court held a fitness restoration hearing on April 4, 2019. At the hearing, the parties stipulated to a mental health progress report presented to the court from the DHS indicating defendant had been participating in his psychiatric treatment program, was compliant with his psychotropic medication regimen, understood the nature of courtroom proceedings, and was willing to cooperate with his attorney to assist in his defense. The report, based upon an evaluation conducted by a licensed clinical psychologist on March 12, 2019, concluded that defendant was restored to fitness. During the hearing, the following colloquy occurred:

                    "[DEFENSE COUNSEL]: He's been restored to fitness.

                    THE COURT: Okay. Have you had a chance to meet with your client?

                    [DEFENSE COUNSEL]: I am, Judge. He—you know—

                    THE COURT: Fine. All right. So, [defendant], you have—you have been found to be fit to stand trial. All right?

                    THE DEFENDANT: Yes, sir.

                    THE COURT: And you got a communication from—

2

[DEFENSE COUNSEL]: I talked to [the licensed clinical psychologist] yesterday. He sent me an e-mail and said he is now fit, and he was gonna file a report. I don't know if he did with you or not.

[THE STATE]: Well I have one from department of health which found that he's fit.

THE COURT: You—you have one from Department—

[THE STATE]: Yes.

THE COURT:—of Human Services?

[THE STATE]: Yes, Your Honor. Want me to make a copy?

THE COURT: Yeah, that'd be fine. Well let's show the case is called for fitness restoration hearing and both sides are present. The conclusion of your team is that you are fit to stand trial. Are you taking your medication, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Good. Good. That's great and is it—show that this Restoration Exhibit 1 is admitted into evidence. We can seal that. All right. Any additional evidence?

[DEFENSE COUNSEL]: No, Judge. We'll stipulate to the report.

THE COURT: All right. Well the report is stipulated to. The Court's had a chance to review that report in its entirety and [the] Court finds that the defendant has been restored to fitness."

¶ 6    Defendant subsequently waived his right to a jury trial. After a bench trial, defendant was found guilty of unlawful restraint and acquitted of the remaining charges. Defendant's motion for

new trial was denied. The court sentenced defendant to a term of 12 months' probation. Defendant appealed.

¶ 7                                          II. ANALYSIS

¶ 8        Defendant argues the circuit court erred by failing to conduct an independent inquiry into his fitness to stand trial and instead improperly relied upon the stipulated mental health progress report findings. Defendant acknowledges his claim was not properly preserved and requests plain error review. The plain error doctrine allows for the review of an unpreserved error

"when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

The first step in plain error analysis is determining whether a clear or obvious error occurred. *Id.*

¶ 9        In determining a defendant's fitness, the circuit court must conduct an independent inquiry and cannot rely exclusively on the parties' stipulation to a psychological report finding defendant fit. *People v. Cook*, 2014 IL App (2d) 130545, ¶ 15. However, due process is generally satisfied and a circuit court's finding of fitness is proper when it is based not only on stipulation, but also encompasses the court's review of a psychological report and its own observations of defendant. *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 30. "The distinction between proper and improper stipulations, however, is a fine one." *Id.* Determinations based on stipulations have been held as proper when the stipulation considers the expert's opinion testimony rather than just the conclusion of fitness. *People v. Lewis*, 103 Ill. 2d 111, 116 (1984). "Upon considering [a] stipulation[ ] and

4

personally observing defendant[ ], the circuit court could find defendant[ ] fit, seek more information, or find the evidence insufficient to support a finding of restoration to fitness." *Id.* Conversely, fitness determinations have been found improper when the circuit court merely accepts the stipulated report without review and fails to demonstrate any exercise of discretion. See *Cook*, 2014 IL App (2d) 130545, ¶ 19; *People v. Thompson*, 158 Ill. App. 3d 860, 864-65 (1987) (circuit court did not review the report and based fitness decision solely on parties' stipulation). While the record must affirmatively reflect that the circuit court exercised its discretion and judgment, detailed findings regarding fitness are not required. *Gipson*, 2015 IL App (1st) 122451, ¶ 29.

¶ 10    The record here shows that in addition to accepting the parties' stipulation to the mental health progress report, the court also independently reviewed and considered the report in its entirety. As the expert opinion in the report referenced medication compliance as a condition of fitness, the circuit court affirmatively exercised its discretion when it questioned defendant about whether he was currently taking his medication. See *People v. Goodman*, 347 Ill. App. 3d 278, 287 (2004) ("In light of the trial court's independent duty to determine a defendant's fitness to stand trial, a trial court may certainly exercise its discretion to pose questions to the defendant."). During this inquiry, the court also had the opportunity to observe and assess defendant's responses and demeanor and make comparisons based on its periodic prior observations of defendant during court appearances where defendant was unfit. Therefore, the court did not err in finding defendant fit for trial during the fitness restoration hearing. See *People v. Robinson*, 221 Ill. App. 3d 1045, 1050 (1991) (where the circuit court reviewed the psychiatrist report, had the opportunity to observe defendant's demeanor, and determined defendant was taking her medication, minimal due process was satisfied).

5

¶ 11        In coming to this conclusion, we reject defendant's reliance on *People v. Gillon*, 2016 IL App (4th) 140801, as the facts in *Gillon* are distinguishable from the instant case. Defendant cites *Gillon* for the proposition that out-of-court judicial review of a stipulated report is insufficient without in-court discussion of the report's bases and opinions. However, the *Gillon* court held the circuit court erred in accepting the parties' stipulation based on the cumulative effect of circumstances that "gave rise to pivotal concerns questioning defendant's fitness." *Id.* ¶ 26. In *Gillon*, the evaluation evaluating defendant's fitness was conducted only two weeks after he was found unfit by the circuit court. *Id.* ¶ 28. The court did not inquire about how defendant was restored to fitness so quickly. *Id.* Additionally, the Fourth District noted the evaluation was conducted by a social worker and not a licensed psychiatrist or psychologist, which potentially necessitated a more thorough analysis. *Id.* ¶ 29. Finally, defendant's in-court behavior was paranoid and agitated, resulting in outbursts that warranted his removal from the courtroom. *Id.* ¶ 30. Unlike *Gillon*, the report here was based upon an evaluation conducted approximately six months later by a licensed clinical psychologist. Moreover, the court observed defendant during the hearing and questioned him to verify he was currently taking his medication. Defendant was responsive, nonhostile, and nothing in the record suggests defendant displayed any concerning behaviors that would have given rise to circumstances that would have prompted further inquiry. See *People v. Mounson*, 185 Ill. App. 3d 31, 37 (1989) (determination of fitness was proper where the circuit court reviewed the stipulated report, briefly questioned defendant, and observed defendant's responsive and nonhostile replies). Therefore, the circuit court properly exercised its discretion in determining defendant's fitness for trial.

¶ 12                                III. CONCLUSION

¶ 13        The judgment of the circuit court of Kankakee County is affirmed.

6

¶ 14     Affirmed.